UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMES MITCHELL GUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:11-CV-183 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| BLUECROSS BLUESHIELD OF ) | |
| TENNESSE, INC., ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment and accompanying memorandum filed by Defendant Bluecross Blueshield of Tennessee, Inc. ("Defendant") (Court File Nos. 19, 20). Plaintiff James Mitchell Gunn ("Plaintiff") responded in opposition (Court File No. 26), and Defendant replied to this response (Court File No. 29).[1] For the reasons discussed below, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 19).

**I.   RELEVANT FACTS**

Plaintiff was hired by SIAG Aerisyin ("SIAG Aerisyn"), LLC, a producer of steel towers located in Chattanooga, Tennessee, on March 28, 2011 (Admin. R. at 115). SIAG Aerisyn provided Plaintiff healthcare insurance under a Group Policy ("the Plan"), which Defendant administered (*id.* at 1). Caleeta Beagles, Defendant's Corporate Legal Coordinator, stated in an

---

[1] In addition to these filings, the Court has also considered Plaintiff's "Brief in Support of ERISA Relief Sought and Objection to the Authenticity of the Administrative Record" ("Trial Brief") (Court File No. 30) and Defendant's response to Plaintiff's Trial Brief (Court File No. 33).

affidavit Defendant received notification from SIAG Aerisyn on March 30, 2011, to add Plaintiff as an insured under SIAG Aerisyn's plan (Court File No. 21, Ex. A, ¶ 2) (hereinafter "Beagles Aff."). Accordingly, Defendant enrolled Plaintiff as of April 1, 2011 (Admin. R. at 115-17). Upon enrollment, Plaintiff received a copy of the Plan's Evidence of Coverage, which sets forth the grievance procedure to be followed in the event a dispute arises.

Throughout May 2011, Plaintiff received treatment, apparently in connection with an injured shoulder. Specifically, Plaintiff visited a doctor and received some type of minor surgery on May 5 (*id.* at 141), received additional medical services on May 11 (*id.* at 142), and made an office visit to the doctor on May 16 (*id.* at 143).[2] Finally, on May 24, 2011, Plaintiff underwent surgery to repair a torn biceps muscle (Court File No. 1, Complaint, ¶ III; Admin R. at 144, 146-47, 149).[3] After each of his visits to the doctor, Plaintiff received from Defendant an Explanation of Benefits ("EOB") which described the treatment Plaintiff had received and the cost of that treatment. Prominently stamped in capital letters on each EOB is "THIS IS NOT A BILL."

Defendant sent Plaintiff ten EOBs in June 2011 for the various medical services he had received in May 2011 (Admin R. 141-50). Each EOB contained a section explaining the grievance and appeal process under the Group Policy (Beages Aff., ¶ 5). This section, entitled

---

[2] In citing the administrative record, the Court has referred to the Explanation of Benefits ("EOB") notices dated from before the filing of the current lawsuit. In his trial brief, Plaintiff claims the administrative record is "wholly false and unauthentic" because it post-dates the filing of his complaint (Court File No. 30, p. 1). Although the Court finds compelling Defendant's explanation that the post-dated documents reflect an effort by Defendant to investigate and remedy any lapses in coverage (Court File No. 33, p. 3), in discussing Plaintiff's medical treatment in May 2011, the Court has relied on documents provided by Defendant to Plaintiff in June 2011–before Plaintiff initiated the current lawsuit.

[3] Plaintiff also appears to have received medical treatment in two follow-up visits after the surgery on May 27, 2011 (Admin. R. at 145) and June 1, 2011 (*id.* at 148).

"Appeal/Grievance Rights" explained, *inter alia*, that:

> If you do not agree with this decision, you may request that we review the decision. This is called a 'grievance' or appeal in your Evidence of Coverage or member handbook. Please read the grievance/appeal section in your Evidence of Coverage or member handbook. You can have someone help you with this grievance/appeal. You can use a lawyer, or you can file the grievance/appeal by yourself. . . . If this is an Employment Retirement Security Act of 1974 (ERISA) Plan, you may file a civil action after you finish the grievance/appeal process (EOB, Admin. R. at 152).

The Plan's Evidence of Coverage document Plaintiff received upon enrolling in healthcare coverage administered by Defendant explained the grievance procedure in more detail (all capitalizations sic):

> You must submit a written request asking the Plan to reconsider an Adverse Benefit Determination, or take a requested action to resolve another type of Dispute (Your "Grievance"). You must begin the Dispute process within 180 days from the date We issue notice of an Adverse Benefit Determination from the Plan or from the date of the event that is otherwise causing You to be dissatisfied with the Plan. If You do not initiate a Grievance within 180 days of when We issue an Adverse Benefit Determination, You may give up the right to take any action related to that Dispute (Evidence of Coverage, Admin. R. at 51).

Although Plaintiff has not alleged he did not receive either the EOBs or the Plan's Evidence of Coverage, he stated in an affidavit he "was never informed of any grievance or appeal process under my health insurance plan on how to contest an adverse benefit determination" (Court File No. 26, Ex. 1., Gunn Aff., ¶ 10).

On June 22, 2011, Defendant received instructions from SIAG Aerisyn to terminate Plaintiff's coverage retroactively to April 30, 2011 (Beagles Aff.,¶ 3). Defendant accordingly terminated Defendant's coverage under the Plan the same day, effective as of April 30, 2011 (Admin. R. at 118-19). The record does not indicate whether Defendant informed Plaintiff it had terminated his coverage; Plaintiff contends he was not informed.

On July 8, 2011, Plaintiff filed the current lawsuit under the Employee Retirement Income

3

Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") (Court File No. 1).[4] Plaintiff seeks $50,000, plus interest, to compensate him for the allegedly erroneous denial of benefits under the Plan. Summons for the lawsuit issued on July 28, 2011, and on August 3, 2011, Beagles in her capacity as Defendant's Corporate Legal Coordinator sent Plaintiff's counsel a letter informing him that 1) Defendant relied on SIAG Aerisyn to provide eligibility information; 2) SIAG Aerisyn had instructed Defendant on June 22, 2011 to terminate Plaintiff's coverage effective April 30, 2011, which Defendant had done; 3) upon contacting SIAG Aerisyn, Defendant learned Plaintiff had worked a week in May 2011, and this fact entitled Plaintiff to coverage in May; 4) Plaintiff's claims from May 2011 would be reprocessed and paid pursuant to the terms of contract, which still held Plaintiff responsible for any applicable co-pays, coinsurance, and deductibles or any non-covered services; and 5) in light of Defendant's willingness to reprocess and pay Plaintiff's claims, Beagles understood Plaintiff's counsel would recommend to his client the lawsuit be dismissed (Admin. R. at 140).

As represented in the letter, Beagles had discovered Plaintiff had worked for SIAG Aerisyn for a week in May, and therefore, pursuant to the Plan under which Plaintiff was covered, Plaintiff's coverage did not terminate until the last day of the month during which his loss of eligibility occurred (Beagles Aff.,¶¶ 6-7). After Defendant updated Plaintiff's eligibility, it reprocessed all of the claims he submitted in May, and paid those claims, less any applicable co-pays, coinsurance, and deductibles or any non-covered services (*id.* at ¶ 8). According to Beagles, all of Plaintiff's eligible claims have been paid on Plaintiff's behalf (*id.* at ¶ 9); Plaintiff concedes Defendant paid for services

---

[4] Defendant concedes the Plan is an employee welfare benefit as defined in 29 U.S.C. § 1002, and thus ERISA applies pursuant to 29 U.S.C. § 1003(a) (Court File No. 20, p. 6).

4

related to his surgery (Court File No. 26, ex. 1, Gunn Aff., ¶ 6), and does not deny Defendant paid for all his claims once it determined he was eligible for coverage in May 2011.

On October 31, 2011, Defendant filed the summary judgment motion now before the Court(Court File No. 19). On April 18, 2012, the Court held a hearing on the motion. At that hearing, Plaintiff's counsel repeated a number of arguments raised in his response to Defendant's motion. In particular, Plaintiff's counsel underscored his concern with the accuracy of the administrative record,[5] and again argued Defendant's failure to provide a written decision to Plaintiff excused him from the requirement to exhaust administrative remedies. In response, Defendant's counsel contended 1) Defendant had remedied any concerns with the authenticity of the administrative record; 2) Plaintiff had failed to exhaust the proper administrative remedies and no excuse was available to him; and 3) Defendant had fully paid all of Plaintiff's covered medical expenses under the Plan. Plaintiff's counsel indicated Plaintiff was still receiving medical bills, but submitted no evidence on this point nor argued these medical bills should have been covered by Defendant.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most

---

[5] The Court discussed this concern above. *See supra*, note 2.

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

Defendant argues the Court should grant summary judgment in its favor because Plaintiff failed to exhaust any and all administrative remedies before filing this lawsuit. Additionally, Defendant contends Plaintiff's lawsuit should not be permitted to proceed because Defendant has

6

already corrected any errors related to lapses in coverage, in effect rendering Plaintiff's claim moot. In a brief response, Plaintiff counters 1) Defendant did not inform him before it terminated his coverage; 2) he was not aware of any grievance or appeal process or the need to exhaust administrative remedies before filing his suit; and 3) "[p]ost-filing attempts to rectify the matter sued on are not a valid defense to a properly brought lawsuit" (Court File No. 26, p. 4). Because the Court concludes Plaintiff failed to exhaust his administrative remedies before filing this lawsuit, the Court grants summary judgment for Defendant.

A. **Summary Judgment for an ERISA claim**

Before addressing exhaustion of administrative remedies, the Court pauses briefly to consider the propriety of resolving this case on Defendant's motion for summary judgment. In ERISA cases, the Court follows guidance from the United States Court of Appeals for the Sixth Circuit indicating the summary judgment mechanism is generally not properly suited for ERISA claims. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring) ("[S]ummary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.").[6] Accordingly, the Court uses a specific scheduling order in ERISA actions which stipulates that all parties are deemed to have moved for

---

[6] In *Wilkins*, the Sixth Circuit was deciding whether the denial of benefits under ERISA was proper. Although Judge Gilman's concurrence did not explicitly limit his proposal of disallowing summary judgment motions in ERISA cases to the issue of whether or not a decision to deny benefits was proper, his emphasis on the oddity of applying Rule 56's screening out mechanism to a case that had already had a full factual hearing before an ERISA administrator, *see Wilkins*, 150 F.3d at 619 (Wilkins, J., concurring), suggests the proposal is best understood as limited only to denial of benefit claims. Under this view, a summary judgment motion in an ERISA case is properly before the Court so long as that motion does not apply to a denial of benefits claim. Thus, Defendant's summary judgment motion on the exhaustion of remedies does not run afoul of the guidance from *Wilkins*.

judgment in their favor based upon the administrative record, and which solicits an opening brief from the plaintiff "stating the grounds on which benefits or other relief" in the case are claimed (Court File No. 14, ¶¶ 4, 5). The scheduling order makes no provision for summary judgment motions.

Notwithstanding the general reluctance to consider summary judgment motions in ERISA cases, courts have increasingly recognized a summary judgment motion is the proper vehicle for considering a defendant's claim that a plaintiff has failed to exhaust administrative remedies before filing a civil action. *Hood v. Ford Motor* Co., No. 11-10649, 2011 WL 3651322, at * 8 (E.D. Mich. Aug 19, 2011); *Zappley v. The Stride Rite Corp.*, No. 2:09-CV-198, 2010 WL 234713, at *4 (W.D. Mich. Jan. 3, 2010) (collecting cases); *Morillo v. 199 SEIU Benefit and Pension Funds*, 783 F.Supp.2d 487, 493 (S.D.N.Y. 2011) ("Where a plan participant or beneficiary has not exhausted her administrative remedies, a plan defendant is entitled to dismissal or *summary judgment*.") (emphasis added and citations omitted); *Thibodeaux v. Prudential Ins. Co. of Am.*, No. 08-1028, 2008 WL 5397236, at *1 (W.D.La. Oct.30, 2008) ("In light of the above, it is clear that [the defendant's] motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is not well founded. The proper procedural vehicle for assertion of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly supported motion for summary judgment."). Because a plaintiff's failure to exhaust remedies is typically considered an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."), such an affirmative defense cannot properly support a motion to dismiss under Rule 12(b)(6), which focuses on the plaintiff's complaint, *Zappley*, 2010 WL 234713, at *4; *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir.1993) ("[G]enerally, the

8

existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim."). Accordingly, when a defendant in an ERISA action raises an ERISA plaintiff's failure to exhaust administrative remedies as an affirmative defense, the Court concludes the proper means to raise such a challenge is through an appropriately supported motion under Fed. R. Civ. P. 56. It follows that Defendant's summary judgment motion in this case is proper.

### B. Exhaustion of Administrative Remedies

Federal law permits an individual covered under an ERISA plan, which the Plan covering Plaintiff was, to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although not formally codified in the statute, courts have long interpreted ERISA to include an exhaustion requirement. *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005) ("[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim."); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) ("The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."). This exhaustion requirement derives from the ERISA plan administrator's obligation to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1132(a)(1)(B). Neither party disputes an ERISA participant is required to exhaust his administrative remedies before filing a civil suit.

There is one well-delineated exception to the exhaustion of administrative remedies requirement. A court may appropriately exercise its discretion and excuse a plaintiff's failure to

9

exhaust administrative remedies where "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998); *accord Hill*, 409 F.3d 721-22. To succeed on a futility claim, a plaintiff must show "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick*, 162 F.3d at 419 (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)). In *Fallick*, the Sixth Circuit applied this exception where an ERISA participant, his attorney, and Ohio's State Department of Insurance had "spent two years trying to ascertain both the precise nature of the methodology used by [the defendant] to determine reasonable and customary medical reimbursements and whether that methodology conformed with the actual terms of the [ERISA] Plan." *Id.* at 420.

Here, although Plaintiff initially claimed he had exhausted his administrative remedies prior to filing suit (Court File No. 1, Complaint, ¶ IV ("Plaintiff has exhausted all of his pre-suit remedies"), his argument in response to Defendant's summary judgment motion changes tack. Plaintiff now concedes he failed to exhaust the requisite administrative remedies, but contends the Court should excuse such failure for either of two reasons: 1) Defendant failed to inform Plaintiff in writing it had terminated his coverage; and 2) Defendant never informed Plaintiff of the requirement to exhaust his administrative remedies. Neither reason refers to the futility exception, and neither provides a basis for excusing Plaintiff's failure to exhaust the administrative remedies.

Plaintiff likely makes no futility argument in this case because the facts simply do not support one. Indeed, the record indicates as soon as Defendant was made aware of its error of improperly terminating Plaintiff's coverage for May 2011, it reprocessed Plaintiff's claims and made all payments covered under the Plan (Beages Aff., ¶¶ 8-9). In addition to calling into question why

10

Plaintiff has maintained this lawsuit, this fact demonstrates quite clearly that seeking to resolve this dispute through the administrative channels would have efficiently and inexpensively addressed Plaintiff's concerns. Unlike the extended and ultimately unfruitful dispute in *Fallick*, Plaintiff's resort to administrative remedies here would not have been futile. Accordingly, the Court concludes the futility exception to the requirement to exhaust administrative remedies under ERISA does not apply.

To the extent Plaintiff offers his additional arguments–that his failure to exhaust the administrative remedies should be excused because Defendant did not inform Plaintiff it had terminated his coverage or because Plaintiff was not aware of the need to exhaust–as an invitation to carve out additional exceptions to the ERISA administrative exhaustion requirement, the Court declines the invitation. Although it appears Defendant may not have complied with its statutory obligation to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant,"[7] 29 U.S.C. § 1133(1), the record nonetheless makes clear Plaintiff knew his coverage under the Plan had been terminated. Plaintiff cites no statutory or other authority to support his claim Defendant's failure to comply with the notice provision in 29 U.S.C. § 1133(1) justifies Plaintiff's subsequent failure to exhaust the administrative remedies under an ERISA Plan. Moreover, because Plaintiff was certainly aware as of July 8, 2011–when he filed this lawsuit–and thus could have at that point filed a challenge through the grievance procedure set out in the Plan, Plaintiff cannot plausibly argue Defendant's

---

[7] Defendant may have informed Plaintiff in writing it had terminated his coverage at SIAG Aerisyn's instruction, but nothing on the record before the Court so indicates.

11

failure to provide notice prejudiced his ability to exhaust the administrative remedies. Accordingly, even assuming Defendant did fail to provide the notice called for in § 1133(1),[8] the Court concludes such a failure does not excuse Plaintiff from the requirement to exhaust the administrative remedies.

Defendant's alleged lack of knowledge about the exhaustion requirement also cannot justify his failure to exhaust the administrative remedies. First, the record indicates Defendant shared the relevant grievance procedure on a number of occasions. When Defendant first covered Plaintiff under the Plan, Plaintiff received a copy of his Evidence of Coverage, which included a section describing how to appeal an adverse benefit determination. Additionally, for every medical visit Plaintiff made he received an EOB from Defendant, and every EOB included a short section entitled "Appeal/Grievance Rights," which explained the procedure to be followed in the event the EOB recipient wanted to challenge an adverse benefit determination. In June 2011 alone, Plaintiff received ten EOBs relating to services he received during May 2011. Second, even if Plaintiff chose not to read or otherwise did not consult his Evidence of Coverage or any of the EOBs explaining the administrative remedies, he is charged with knowledge of their contents under existing Sixth Circuit case law, *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) ("Actual knowledge does not 'require proof that the individual Plaintiffs actually saw or read the documents that disclosed' the allegedly harmful investments.") (citing *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F.Supp.2d 416, 419 n. 3 (S.D.N.Y.2008)), and his "failure to read the documents will not shield [him] from having actual knowledge of the documents' terms," *id.* (citations omitted); *see also Shirk v. Fifth Third Bancorp*, No. 05–cv–049, 2009 WL 3150303, at *3 (S.D.Ohio Sept. 30, 2009)

---

[8] This assumption flows from the procedural posture of this case and the requirement to construe all facts and inferences in a light most favorable to Plaintiff.

12

(holding actual knowledge of contents of ERISA plan runs from the date the documents were provided by the ERISA plan administrator). Thus, Plaintiff is charged with constructive knowledge of the requirement to exhaust his administrative remedies based on his receipt of the Coverage of Evidence and the Explanation of Benefits notices Accordingly, Plaintiff's argument his failure to exhaust the administrative remedies should be excused by his ignorance of the need to do so must fail.

Because Plaintiff received considerable information about the exhaustion requirement and is charged with actual knowledge of this information, the Court concludes Plaintiff's alleged lack of knowledge regarding the exhaustion requirement does not excuse his failure to exhaust the administrative remedies. The Court also notes Plaintiff consulted an attorney, who has filed this lawsuit on his behalf. By reading the Coverage of Evidence and the EOBs in Plaintiff's possession or conducting even a few minutes of legal research, the attorney should have been able to inform Plaintiff of the requirement to exhaust his administrative remedies before filing a civil ERISA claim.

Because Plaintiff failed to exhaust his administrative remedies in this ERISA action before filing a civil claim, summary judgment for Defendant under Fed. R. Civ. P. 56 is proper. Having concluded summary judgment for Defendant is proper based on Plaintiff's failure to exhaust the administrative remedies before filing this ERISA action, the Court does not reach Defendant's second argument that its subsequent remedial actions moot Plaintiff's claim.

## IV.   CONCLUSION

For the reasons discussed above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 19). There being no other issues in this case, the Court will **DIRECT** the

Clerk of Court to **CLOSE** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**